BERNARD A. HEEREY, Plaintiff-Appellant, v. JOSEPH BERKE et al., Defendants-Appellees.

First District (1st Division)   No. 87—2624

Opinion filed February 14, 1989.

Nathaniel I. Grey, P.C., of Chicago (Kimberly Anderson Fortcamp, of counsel), for appellant.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Joanne Simboli Hodge, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

Steven R. Dobrofsky, of Chicago, for appellees Barry L. Newdelman, Bank of Ravenswood, Louis Wolf, and Urban Construction, Ltd.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal from a dismissal of a complaint under section 11—13—15 of the Illinois Municipal Code (the Adjacent Landowners Act) (Ill. Rev. Stat. 1985, ch. 24, par. 11—13—15) and the Lake Michigan and Chicago Lakefront Protection Ordinance (the Lakefront Protection Ordinance) (Chicago Municipal Code ch. 194B—1 et seq. (1988)). The issues raised on appeal are as follows: (1) whether the trial court erred in. dismissing plaintiff's amended complaint; (2) whether the trial court erred in granting defendants' motion for a protective order; and (3) whether the trial court erred in denying plaintiff's petition for change of venue. We affirm.

Plaintiff Bernard Heerey is the owner of property at 1159 North State Street in Chicago. The adjacent property at 1163-67 North State is held by defendants Louis Wolf, Joseph and Benitta Berke and the Bank of Ravenswood as trustee (the private defendants). Benitta

Berke was never served and is not a party to this appeal. Defendant Barry Newdelman is the architect for the private defendants' property. Urban Construction, Ltd., was named by plaintiff as Newdelman's alleged employer. The remaining defendants include the City of Chicago and various subcontractors. Both of the properties at issue here lie within the private use zone governed by the Lake Michigan and Chicago Lakefront Protection Ordinance (Chicago Municipal Code ch. 194B—1 *et seq.* (1988)).

On August 26, 1985, Benitta Berke, who was the record title owner of the parcel immediately adjacent to plaintiff's property, sent a letter to Heerey by certified return receipt mail advising him of anticipated construction on her property and requesting written permission to enter his property for the purpose of protecting his property from any damage that might be caused by excavation. In reply, Heerey acknowledged that the letter was sent pursuant to the provisions of the protection of adjacent landowners act (Ill. Rev. Stat. 1987, ch. 111½, par. 3301), but alleged that the letter was inadequate under the act. Berke then replied, stating that she had been denied the necessary license to enter upon Heerey's property and informed him that it was his responsibility to protect his land and all the structures that were on it.

On September 16, 1985, Benitta Berke and Louis Wolf submitted an application to the Chicago Plan Commission for consideration under the Lakefront Protection Ordinance. Defendants sought permission to construct a three-story commercial building. That application was withdrawn without prejudice on November 25, 1985, and no formal order of the plan commission was ever entered.

On December 16, 1985, Berke and Wolf submitted a second application to the plan commission in which they sought permission to construct three separate, three-story commercial buildings at 1163-67 North State. On January 9, 1986, after a public hearing on the matter, the commission approved the application. The commission's resolution stated that the commissioner of the department of planning, Elizabeth Hollander, had reviewed the application, received reports from various city agencies involved and concluded that the application was in substantial conformance with the Lakefront Protection Ordinance.

The private defendants then applied for a building permit for the center lot (1165 North State Street). The application contained an affidavit from defendant Newdelman that he would apply for permits for the other two lots (1163 and 1167 North State) no later than April 10, 1986. On the basis of this affidavit, Commissioner Hollander advised the department of zoning that the permit application had been

approved as conforming to the Lakefront Protection Ordinance provided that the additional permit applications were filed for 1163 and 1167 North State. On April 11, 1986, the department of zoning approved defendants' permit applications for 1163 and 1167 North State. On April 17, 1986, Commissioner Hollander approved the two additional permit applications as also conforming to the Lakefront Protection Ordinance.

On May 28, 1986, Berke and Wolf entered into a "Foundation Agreement" expressing their interest to lay a common foundation for the construction of the three buildings. When the construction began, plaintiff's attorney contacted the city's department of inspectional services complaining about the construction. Construction was ordered stopped at 1167 and 1163 North State on August 15, 1986. On August 21, the department ordered all work stopped at 1165 North State and the permit revoked as the work was not proceeding in accordance with the permits and drawings. A redesign of the foundation was submitted and approved and new permits for 1163 and 1167 were issued on September 26, 1986, for three three-story buildings. On December 3, 1986, plaintiff filed a complaint against the private defendants seeking injunctive relief, a declaration of the "real and actual owner" of the 1163-67 North State site, a halt to alleged "unlawful construction," restoration of lateral and subjacent support to his property and a permanent injunction against further construction. In the complaint plaintiff also alleged that the City of Chicago had allowed unlawful construction due to the city's failure to enforce the conditions and requirements in its own municipal permits, and that as a result of the city's acquiescence in the unlawful construction, the lateral and subjacent support of plaintiff's property was damaged. Plaintiff sought preliminary and permanent injunctions to stop the city from issuing permits until defendants complied with the various permits. Plaintiff further alleged that the private defendants as well as the city had intentionally and maliciously constructed the buildings in violation of court orders, statutes and permits and sought $50,000 actual damages, $500,000 in punitive damages and attorney fees and costs.

The court granted defendants' motions to strike and dismiss and gave plaintiff 30 days to file an amended complaint. Plaintiff filed an amended complaint in which he alleged that defendants had violated the Lakefront Protection Ordinance and sections 43—4, 43—10, and 43—11 of the Municipal Code of Chicago. The plaintiff also alleged that he was entitled to relief under section 11—13—15 (Ill. Rev. Stat. 1985, ch. 24, par. 11—13—15), relating to adjacent landowners.

On February 18, 1987, plaintiff filed a petition for change of venue. Following a hearing on February 26, 1987, the petition was denied on the basis that the petition was untimely, coming after rulings on substantial issues and lacked a showing of prejudice. At the same time, the court sustained defendant Newdelman's motion for a protective order as to discovery. Both the private defendants and the city again filed motions to dismiss. Those motions were granted and plaintiff now brings this appeal.

We first address the plaintiff's claim that the trial court erred in dismissing his claims against the city brought under the Adjacent Landowners Act (Ill. Rev. Stat. 1987, ch. 24, par. 11—13—15) and under the Lake Michigan and Chicago Lakefront Protection Ordinance. Chicago Municipal Code ch. 194B, arts. I through IX (1988).

The plaintiff claims that his original and amended complaints stated a cause of action against the city for injunctive relief and damages pursuant to the Adjacent Landowners Act (Act) (Ill. Rev. Stat. 1987, ch. 24, par. 11—13—15) and that he was entitled to the entry of a temporary restraining order under the Act. He contends that he satisfied the requirements of the Act in that he alleged that the private defendants' construction violated the January 9, 1986, order of the Chicago Plan Commission and also that he alleged both damage to the lateral and subjacent support to the foundation and building on his property and the threat of future damage arising from defendants' excavation on their property.

■ The Adjacent Landowners Act (Ill. Rev. Stat. 1987, ch. 24, par. 11—13—15) falls within division 13 of the Municipal Code, regulating zoning. The particular provision of division 13 upon which plaintiff relies states:

> "In case any building or structure, including fixtures, is constructed, reconstructed, altered, repaired, converted, or maintained, or any building or structure, including fixtures, or land, is used in violation of an ordinance or ordinances adopted under Division 13, 31 or 31.1 of the Illinois Municipal Code, or of any ordinance or other regulation made under the authority conferred thereby, *the proper local authorities of the municipality, or any owner* or tenant of real property, within 1200 feet in any direction of the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, *may institute any appropriate action or proceeding* (1) to prevent the unlawful construction, reconstruction, alteration, repair, conversion, maintenance, or

use, (2) to prevent the occupancy of the building, structure, or land, (3) to prevent any illegal act, conduct, business, or use in or about the premises, or (4) to restrain, correct, or abate the violation. *When any such action is instituted by an owner or tenant, notice of such action shall be served upon the municipality at the time suit is begun, by serving a copy of the complaint on the chief executive officer of the municipality,* no such action may be maintained until such notice has been given." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 24, par. 11—13—15.) The purpose of section 11—13—15 is to prevent zoning violations (see *Bull v. American National Bank & Trust Co.* (1969), 112 Ill. App. 2d 32, 36, 250 N.E.2d 839), and both section 11—13—15 and its predecessor (Ill. Rev. Stat. 1941, ch. 24, par. 73—9) have empowered the city to file complaints against private landowners for municipal code violations. (See, *e.g., City of Chicago v. Exchange National Bank* (1972), 51 Ill. 2d 543, 283 N.E.2d 878; *City of Chicago v. Southgate Corp.* (1980), 86 Ill. App. 3d 56, 58, 407 N.E.2d 881.) Section 11—13—15 also gives the adjacent landowner a private right of action against the alleged private violator. *(Parsons v. Guild Grain Co.* (1970), 125 Ill. App. 2d 59, 62-63, 259 N.E.2d 806.) Although the terms of the statute provide that either the city or an adjacent landowner may institute proceedings against private landowners who violate zoning ordinances, the language of the statute does not provide a cause of action against the city by a landowner. Plaintiff's argument that section 11—13—15 permits a cause of action against the city since it does not preclude it is contrary both to the language of the statute and to the rules of statutory construction, which provide that the plain and obvious meaning of a statute may not be enlarged by the court. *Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 84, 256 N.E.2d 758.

■ Similarly, there is no merit to plaintiff's argument, unsupported by any authority, that the city has a duty to enforce this ordinance and, as it failed to do so, public policy mandates that the affected adjoining landowner has a cause of action against the city. By its plain and obvious terms, section 11—13—15 states that a municipality "may institute any appropriate action or proceeding." In the same manner an adjacent landowner "may institute any appropriate action or proceeding" to prevent unlawful construction. The term "may" in the statute is clearly discretionary and not mandatory; thus, we conclude that although both the city and the plaintiff arguably could have instituted an action to abate an alleged violation on the part of the private defendants, the city's failure to do so does not create an alternative and essentially retaliatory cause of action against

the city by the plaintiff.

Plaintiff also sought injunctive relief and damages against the city based upon section 1 (Ill. Rev. Stat. 1987, ch. 111½, par. 3301). Section 1 is part of a legislative scheme for public health and safety, which empowers municipalities to regulate the duties and responsibilities of adjacent landowners. Section 1 provides in part as follows:

> "Each adjacent owner is entitled to the continuous lateral and subjacent support which his land receives from the adjoining land, subject to the right of the owner of the adjoining land to make proper and usual excavations on the same for purposes of construction or improvements, under the following conditions." Ill. Rev. Stat. 1987, ch. 111½, par. 3301.

Section 1(1) then sets out the requirements that any owner intending to permit excavation must give notice in writing to the adjacent owner and give the adjacent owner license to enter onto the land where the excavation is to take place for the purpose of protecting his own land. Failure to comply with the notice requirement or to allow the adjoining landowner to take measures to protect his land and its support opens the owner or possessor of land where the excavation is being made to liability for any damage to the adjacent land. (Ill. Rev. Stat. 1987, ch. 111½, pars. 3301(1), (5).) This statute, on its face, provides a cause of action only against an adjoining landowner and not against a municipality; therefore, the trial court properly dismissed plaintiff's suit against the city to the extent that it was based upon this statutory provision.

Plaintiff also contends that the trial court erred in dismissing his action against the city under the Lakefront Protection Ordinance. The main thrust of his argument is that the city has a duty to enforce its own ordinances, among them the Lakefront Protection Ordinance, and that the city breached its duty to do so by failing to follow the procedures the city set out for itself in Commissioner Hollander's letter of April 7, 1986. Plaintiff points out that Commissioner Hollander, in that letter, approved the permit application for 1165 North State Street only upon the condition that Berke and Wolf submit applications for the 1163 and 1167 North State properties by April 10, 1986. Plaintiff claims that as the applications and plans for those properties were not submitted by that date, the permit issued for the 1165 North State property was improvidently granted and therefore construction at that site commenced without a legally granted permit. Plaintiff also claims that the city breached its duties under the Lakefront Protection Ordinance by rescinding a stop work order without requiring the private defendants to correct problems related to the

foundation and the separation of the buildings and by permitting the inclusion of a basement in the structure at 1163 North State Street which was not included in the plan initially submitted to the Chicago Plan Commission.

■■ We reject plaintiff's argument as we find he does not possess a private right of action under the Lakefront Protection Ordinance. (See *Alschuler v. Department of Housing & Urban Development* (7th Cir. 1982), 686 F.2d 472; *Clement v. O'Malley* (1981), 95 Ill. App. 3d 824, 420 N.E.2d 533, *aff'd* (1983), 96 Ill. 2d 26.) In *Alschuler v. Department of Housing & Urban Development* (7th Cir. 1982), 686 F.2d 472, adjacent landowners brought suit against the Department of Housing and Urban Development and various private defendants alleging that developers of a challenged low-income housing project had violated the Lakefront Protection Ordinance by failing to obtain prior approval for the project from the Chicago Plan Commission. The plaintiffs in *Alschuler* attempted to bring a private claim for violation of the Lakefront Protection Ordinance premised upon the right to bring private actions under the Adjacent Landowners Act (Ill. Rev. Stat. 1981, ch. 24, par. 11—13—15). The court in *Alschuler* noted that by its terms, section 11—13—15 provides for private enforcement only for violations of ordinances adopted under divisions 13, 31 or 31.1 of the Illinois Municipal Code. (*Alschuler*, 686 F.2d at 487.) The court then rejected the private plaintiff's claims on the basis that the Lakefront Protection Ordinance is not the type of zoning ordinance contemplated by section 11—13—15; rather, "[i]t is more appropriately characterized as an ordinance under Division 48.2 of the Illinois Municipal Code, entitled 'Preservation of Historical and Other Special Areas' (Ill. Rev. Stat. ch. 24, §§11—48.2—1 *et seq.*)." (*Alschuler*, 686 F.2d at 488; see also *Clement v. O'Malley* (1981), 95 Ill. App. 3d 824, 420 N.E.2d 533, *aff'd* (1983), 96 Ill. 2d 26.) The court noted that division 48.2 "grants broad powers to designate by ordinance areas having, among other things, 'special historical, community, or aesthetic interest or value,' and 'to provide special conditions, to impose regulations governing construction, alteration, demolition and use' *** of the area *** [and that] [t]he declaration of intent to the Lakefront Protection Ordinance closely tracks the language of the Division 48.2 declaration of policy and grant of power." (*Alschuler*, 686 F.2d at 488-89.) The court pointed out that unlike division 13 zoning ordinances, which envision detailed standards and minimal discretion, division 48.2 ordinances permit the delegations of power guided only by broad general statements of policy. We agree with the *Alschuler* court's reasoning in reaching the determination that the Lakefront Protection

Ordinance is not a division 13 zoning ordinance. We therefore affirm the trial court's dismissal of plaintiff's claim against the defendant city under the Lakefront Protection Ordinance. As we have determined that plaintiff has no cause of action against the city, we need not address his arguments as to procedural errors or damages as they apply to defendant city.

With respect to defendants Barry L. Newdelman, Louis Wolf, the Bank of Ravenswood and Urban Construction, Ltd., plaintiff contends that the trial court erred in failing to grant a declaratory judgment as to the real and actual owner of the subject property. Heerey also sought a declaratory judgment to determine that the owners of the three parcels owed an absolute duty to cause no damage to the party wall foundation and to the subjacent and lateral support.

The essential requirements of a declaratory judgment action are: "(1) A plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an actual controversy between the parties concerning such interests, though there need not be any act in violation of such interests." (*Griffin v. County of Cook* (1938), 369 Ill. 380, 398, 16 N.E.2d 906.) Mere speculation as to future events does not satisfy the requirement that an actual controversy must exist. (*Spalding v. City of Granite City* (1953), 415 Ill. 274, 283, 113 N.E.2d 567.) The granting or denying of a request for declaratory relief is a matter for the sound discretion of the trial court, and absent a showing of abuse of that discretion, its determination will not be disturbed on appeal. (*Aetna Insurance Co. v. Janson* (1978), 60 Ill. App. 3d 957, 377 N.E.2d 296.) Furthermore, dismissal of the complaint is an appropriate method of declining to grant declaratory relief. *Coles-Moultrie Electric Cooperative v. City of Charleston* (1972), 8 Ill. App. 3d 441, 444, 289 N.E.2d 491.

Initially we note that defendants Newdelman and Urban Construction, Ltd., are not proper parties to this suit as they have no interest opposing that of plaintiff nor is there an actual controversy between Heerey and Newdelman or Urban Construction. Newdelman was served in the name of Urban Construction, Ltd., his alleged employer, but affidavits submitted to the trial court established that Newdelman had never been employed by Urban Construction, was neither an equitable nor legal owner of the adjacent property, and was not in charge of any of the construction being carried on at 1163-1167 North State Street.

In his complaint, the plaintiff acknowledged that at the time relevant to this litigation, record title to the parcel adjacent to the Heerey property at 1159 North State Street was in the name of

Benitta Berke. Prior to beginning excavation on that property at 1163 North State, Berke notified Heerey in writing of the anticipated excavation on her parcel and sought permission to go onto Heerey's land for purposes of protecting his property from damage. In response, Heerey acknowledged that the letter was sent pursuant to the protection of adjacent landowners act and in essence denied her request. The record also reflects that defendants the Bank of Ravenswood, as the trustee under trust No. 25—5879, and Louis Wolf were the respective legal and equitable owners of the middle parcel of the three which was not adjacent to plaintiff's property. Insofar as the middle parcel is not adjacent to plaintiff's land, there can be no actual controversy as to the ownership of that parcel. The plaintiff cannot now seriously contend that a declaratory judgment as to the ownership of the 1163-1167 North State Street properties was requisite to protecting his own property under the Adjacent Landowners Act.

■ Similarly, we find no abuse of discretion in failing to grant a declaratory judgment as to the type of structure that could be built on the 1163-1167 North State Street properties or as to the private defendants' duty not to cause damage to the subjacent and lateral support to plaintiff's building. The private defendants were proceeding according to building permits issued by the department of inspectional services. Although there were apparently some procedural irregularities in the permit granting procedure, plaintiff has failed to show that he suffered any injury as a result of these irregularities. Nor does he state any actual damage to the party wall foundation or to the lateral support to the building located on his property. Section 1(3) (Ill. Rev. Stat. 1987, ch. 111½, par. 3301(3)) provides:

"In making any excavation, reasonable care and precautions shall be taken to sustain the adjoining land as such, *without regard to any building or other structure which may be thereon*, and there is no liability for damage done to any building or other structure by reason of the excavation except as herein provided or otherwise provided or allowed by law." (Emphasis added.)

Subsection 5 of the statute provides in pertinent part:

"If the excavation is intended to be or is deeper than the standard depth of foundations as herein defined, then the owner of the land on which the excavation is being made, *if given the necessary license to enter on adjoining land, and not otherwise*, shall protect the said adjoining land and any building or other structure thereon * * *." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 111½, par. 3301(5).)

Plaintiff's contention that the notice of intent to excavate given by Benitta Berke was insufficient under the statute as it failed to state the precise depth of excavation and therefore a controversy exists as to who has a duty to protect the Heerey property from damage is not well founded. Plaintiff was given notice that defendant Berke intended to excavate, she sought permission to enter Heerey's land to protect his property and he unequivocally denied her permission to do so in writing. This was a sufficient basis for the trial court to determine that there was no actual controversy as to who had a duty to protect plaintiff's property from damage.

■ Plaintiff has also failed to state a cause of action for temporary or permanent injunctive relief as to the private defendants. In order to establish that he had a right to a temporary restraining order or a preliminary injunction, plaintiff had the burden of demonstrating that (1) he had a protectible right; (2) he would suffer irreparable injury if injunctive relief was not granted; (3) his recovery at law was inadequate; and (4) there was a likelihood that he would succeed on the merits. (See *Houseknecht v. Zagel* (1983), 112 Ill. App. 3d 284, 291-92, 445 N.E.2d 402.) A complaint for injunctive relief must contain on its face a clear right to relief and state facts which establish the right to such relief in a positive, certain and precise manner. (*Parkway Bank & Trust Co. v. City of Darien* (1976), 43 Ill. App. 3d 400, 406, 357 N.E.2d 211.) Conclusion, opinion or allegations on information and belief are not sufficient to support a claim for injunctive relief. (*Ambassador Foods Corp. v. Montgomery Ward & Co.* (1963), 43 Ill. App. 2d 100, 104, 192 N.E.2d 572.) Examining plaintiff's amended complaint in light of these principles, we find that the trial court did not err in denying plaintiff's petition for injunctive relief.

Plaintiff sought injunctive relief based upon section 11—13—15 (Ill. Rev. Stat. 1985, ch. 24, par. 11—13—15), which provides that an aggrieved property owner may sue for injunctive relief based upon illegal construction carried on by a neighboring landowner. The main thrust of plaintiff's argument is that architect Barry Newdelman made certain statements regarding the planned construction before the Chicago Plan Commission, that the plan commission approved the project based on Newdelman's statements and that the plan commission's recommendations under the Lakefront Protection Ordinance are binding. The charges of illegality stem from the fact that subsequent to the plan commission's approval of the project, certain changes were made in the design of the building. Despite the later issuance of permits and affidavits by the city chief construction inspector verifying that the permits were being complied with, the plaintiff argues that the permits were

void and an injunction should have issued. We disagree.

For the reasons stated previously with regard to defendant City of Chicago, we find that defendant has no private right of action under the Lakefront Protection Ordinance. We note, however, that plaintiff has mischaracterized the role of the plan commission in administering that ordinance. The duties of the plan commission are set forth in the Municipal Code of Chicago, chapter 194B—6.1. One of the commission's duties is to review and approve any planned construction that falls within the Lakefront Protection District. The focus of the commission is to insure that property is developed consistent with certain aesthetic, environmental and public health goals. While determinations of the plan commission are final and binding insofar as they determine that a proposed project either is or is not consistent with the overall purposes of the ordinance, proceedings before the commission are not conclusive with respect to the issuance of building permits regulating the manner of construction. Chapter 194B—3(j) provides that with respect to the land in issue, the Chicago Zoning Ordinance, chapter 194A of the Chicago Municipal Code, shall govern except where such provisions are in substantial conflict with the purposes of the Lakefront Protection Ordinance.

Plaintiff here has not alleged that the construction violates the zoning ordinance or other provisions of the building code. Plaintiff has instead attacked certain representations made before the plan commission, but as the plan commission only determines whether the Lakefront Protection Ordinance is being violated and lacks the authority to impose conditions upon a building permit, the challenged proceedings before the plan commission do not provide a basis for injunctive relief.

Plaintiff's claim against the private defendants for injunctive relief under the protection of adjacent landowners act (Ill. Rev. Stat. 1987, ch. 111½, par. 3301 *et seq.*) was also properly dismissed. The purpose of section 1 is to provide adjacent landowners with a cause of action where the continuous lateral and subjacent support of their land is damaged by an adjoining landowner's excavations. The statute requires that an owner or possessor of land who intends to excavate on his land must give due and reasonable notice in writing to adjoining landowners.

Depending on the depth of the planned excavation, either subsection 1 or subsection 5 of the act will apply. (Ill. Rev. Stat. 1987, ch. 111½, pars. 3301(1), (5).) If the anticipated depth is not more than the standard 8-foot depth of foundations, subsection 1 of the act applies, and the adjoining landowner, if given notice, will have no less than 30 days to shore up his own property. If the excavation is in-

tended to be deeper than the standard depth, subsection 5 applies and an excavating landowner, if given necessary license, shall enter the adjoining landowner's property and take the necessary precautions to protect the adjoining landowner's property. The reason for the notice as to depth is that unless the notice specifies the depth of the excavations, an adjoining landowner is unable to determine whether he or the excavating landowner has the duty to shore up the property since the depth of the excavation is determinative. *Smith v. Roberts* (1977), 54 Ill. App. 3d 910, 914, 370 N.E.2d 271.

As previously noted, notice of intent to excavate was given by defendant Benitta Berke in 1985 and excavation commenced some time in 1986. Although the notice failed to specify the exact depth of the anticipated excavation, the letter requested permission to enter onto Heerey's land for the purpose of protecting his property as required by section 1(5) (Ill. Rev. Stat. 1987, ch. 111½, par. 3301(5)), where excavations are intended to be deeper than the standard depth of excavation. Benitta Berke substantially complied with the requirement of section 1(5) by providing Heerey with due and reasonable notice of the anticipated excavation and requesting permission to enter Heerey's property for the purpose of protecting his land.

■■ As a threshold matter, plaintiff did not establish that he would be irreparably harmed if an injunction did not issue. The purpose of injunctive relief is to either relieve the plaintiff of severe and irreparable injury or to preserve the status quo so that a meaningful decision can be rendered at a later time. Injunctive relief is warranted only where the threatened injury is actual and imminent. (*Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 499-500, 422 N.E.2d 1166.) Moreover, monetary damages must be incapable of redressing any injury caused by the alleged wrongdoing. *Kanter & Eisenberg v. Madison Associates* (1987), 116 Ill. 2d 506, 510-11, 508 N.E.2d 1053.

■■ Plaintiff's conclusory allegation that he would be irreparably harmed if the injunction does not issue is unconvincing. While plaintiff is seeking injunctive relief as well as money damages, we believe that if any damage does occur, plaintiff has an adequate remedy at law for damages against the private defendants under the protection of adjacent landowners act (Ill. Rev. Stat. 1987, ch. 111½, par. 3301).

We also reject plaintiff's contention that the trial court erred in granting defendant Newdelman's motion for a protective order barring discovery by plaintiff until all defendants had been served and all defendants' motions to strike and dismiss plaintiff's amended complaint had been disposed of.

■■ Illinois Supreme Court Rule 201(d) (107 Ill. 2d R. 201(d)),

provides as follows:

> "(d) *Time Discovery May be Initiated.* Prior to the time all defendants have appeared or are required to appear, no deposition or other discovery procedure shall be noticed or otherwise initiated without leave of court granted upon good cause shown."

Pursuant to Supreme Court Rule 201(c) (107 Ill. 2d R. 201(c)), the court may "make a protective order *** regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." The trial court had been advised that the owner of the adjacent parcel, Benitta Berke, had not been served. Summons was apparently sent to an address in Florida despite the fact that all of the applications before the plan commission and other relevant documents established that she was in Chicago. Under the circumstances here, we believe the trial court did not abuse its discretion in barring discovery by Heerey until all defendants had been served and the pending motions to strike and dismiss had been disposed of.

*In re Estate of Watson* (1984), 127 Ill. App. 3d 186, 468 N.E.2d 836, relied on by plaintiff, does not require us to hold otherwise. *Watson* involved a will contest in which the appellate court held that the trial court had abused its discretion by denying the petitioner's right to commence discovery prior to hearing a motion to dismiss but after all the necessary parties had been served and had appeared. The petitioner was seeking information relating to the physical and mental condition of the decedent at the time the will was executed. Here, the record holder of the adjacent parcel of land had not been served and plaintiff had shown no good cause why discovery should have been allowed prior to doing so.

We next address plaintiff's claim that it was prejudicial error for the court to deny his motion for a change of venue. Plaintiff contends that a change of venue should have been granted as a matter of right as the trial court had not yet ruled on any substantial issue. In the alternative, he argues that the trial court had prejudiced his right to a full and fair hearing by ignoring or cutting off the arguments of his counsel, by refusing to allow his counsel to respond to the issues of damages and timeliness raised by the court and by defendants' motions and by denying his motion for a temporary restraining order without permitting his counsel to respond.

The venue act (Ill. Rev. Stat. 1987, ch. 110, par. 2–101 *et seq.*) provides for one automatic change of venue prior to any substantive ruling in the case provided the statutory requirements are satisfied. (*United Nuclear Corp. v. Energy Conversion Devices, Inc.*

(1982), 110 Ill. App. 3d 88, 111-12, 441 N.E.2d 1163.) The act is intended to be applied liberally to promote, rather than defeat, a change of venue. (*Stambaugh v. International Harvester Co.* (1984), 102 Ill. 2d 250, 261, 464 N.E.2d 1011.) A petition for change of venue in a nonjury case will normally be granted where it is based upon a belief that the trial judge is prejudiced against a party or his attorney. (*L.W. Paul Supply Co. v. Meyer* (1975), 27 Ill. App. 3d 526, 327 N.E.2d 101.) However, it is not the purpose of the venue act to grant a plaintiff the power to pick and choose among judges. *Rosewood Corp. v. Transamerica Insurance Co.* (1974), 57 Ill. 2d 247, 253, 311 N.E.2d 673.

▪▪▪ Here, after lengthy hearings, the trial court had dismissed plaintiff's petition for a temporary restraining order, stating that there was no emergency and no irreparable harm, and ruled on defendants' motions to strike and dismiss. These were clearly rulings on substantial issues, and, therefore, in order to secure a change of venue, plaintiff had the burden of proving actual prejudice by the trial court. (See *American State Bank v. County of Woodford* (1977), 55 Ill. App. 3d 123, 128, 371 N.E.2d 232.) Contrary to plaintiff's assertions, a review of the record shows that plaintiff has mischaracterized certain statements of the trial court by misquoting the transcript and that the trial court gave plaintiff adequate opportunity to present his case to the court. Plaintiff has failed to demonstrate any prejudice of the trial court that would have warranted a change of venue following ruling on motions to dismiss, and accordingly, we find that the trial court did not err in denying plaintiff's motion for a change of venue.

▪▪▪ Plaintiff's motion to strike certain matters in the brief of the private defendants has no merit. All of the matters to which plaintiff now objects were before the trial court and are part of the record on appeal. Accordingly, that motion is denied.

For the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY and QUINLAN, JJ., concur.