ANDREW RIZZUTO *et al.*, Plaintiffs-Appellants, v. THEODORE J. RE-
MATT, Indiv. and as Bishop, Trustee and President of the Corporation of the
North American Old Roman Catholic Church and its Ministries, Defendants-
Appellees.

First District (3rd Division)   No. 1—91—2100

Opinion filed June 28, 1995.

Richard I. Feingold, of Chicago, and Wyvonia Ford Bridgeforth, of Oak
Park, for appellants.

Donald C. Clark, Jr., of Chicago, for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiffs, Andrew Rizzuto, Angeline Rizzuto, August Pastorello,
Consentino Cipolla, Rose Accurso and Guy Hartford brought an ac-
tion seeking injunctive relief, a constructive trust and an accounting
against defendant Theodore J. Rematt, individually and as Bishop
and trustee of the North American Old Roman Catholic Church and
its Ministries (the Church). The trial court denied plaintiffs' motion
for substitution of judge, denied plaintiffs' requests for injunctive
relief, a constructive trust and an accounting, and dismissed
plaintiffs' first amended complaint (Complaint). We affirm.

The six plaintiffs are parishioners, supporters and beneficiaries of
the Church. In their Complaint, plaintiffs allege that (1) prior to Re-

matt's becoming trustee of the Church, it generated sufficient income to meet expenses and was without mortgages or significant debt; (2) after his succession to trustee, Rematt, solely, made a decision to increase the funds needed to initiate the building of a new church structure; (3) Rematt made a $300,000 mortgage on the real property assets of the Church trust without approval of the board consisting of the parishioners and supporters; (4) Rematt provided financial reports to the plaintiffs, but the reports were not drafted according to the American Certified Public Accountant Standards or any other accounting standard which accurately indicates the amount of funds raised by the parishioners; (5) Rematt has refused to provide plaintiffs with an accounting of the assets of the Church trust although many requests have been made; (6) on information and belief, Rematt has administered the Church trust in a manner so that he has received substantial sums of money to fund his personal activities and expenses; and (7) Rematt has breached his fiduciary duty owed to plaintiffs as beneficiaries of the Church trust.

In view of the allegations of the Complaint, a brief history of the Church is warranted. The Church is a Catholic church of Christian denomination, but is not part of or affiliated with the more well-known Roman Catholic Church. It was incorporated in Illinois in 1919 when its charter was filed pursuant to the Religious Corporation Act of Illinois (805 ILCS 110/35 (West 1992)).

On May 2, 1919, the Church members, representatives and beneficiaries, and its trustee and Archbishop executed a trust agreement entitled "Common Law Trust" (Trust), which was filed with the Secretary of State of Illinois on May 19, 1919. Apparently, the Trust agreement was filed with the Secretary of State's office as an accompaniment to the corporate charter. Since 1919, the Church has operated pursuant to its corporate charter, and all its property is held pursuant to and in accordance with the Trust.

In accordance with its charter, the Church is a hierarchical entity headed by a single individual, who is the sole trustee of the Church and is known as the Archbishop. Rematt is presently the duly appointed and presiding trustee and Archbishop. He is a successor trustee and Archbishop from a line of successors to the original trustee and Archbishop, Giuseppe Maria Abbate.

None of the aforementioned facts are disputed or challenged by plaintiffs. Indeed, the Trust agreement, evidencing its filing with the Secretary of State's office on May 19, 1919, is attached as an exhibit to the Complaint, and plaintiffs allege in their pleading that all Church property has been and is owned and held exclusively under and pursuant to the Trust agreement. Moreover, plaintiffs allege in

the Complaint: "The named Plaintiffs as Parishioners and Supporters are beneficiaries of said Common Law Trust, made the second day of May, 1919."

Specifically, the trust provides:

"The Members of the Congregation, wherever residing \*\*\* and all other persons who may become members of said Congregation, or of any other Congregation hereafter to be organized hereinabove named, as Beneficiaries, represented by their Committee appointed for this purpose \*\*\* and Giuseppe M. Abbate of said Chicago, Illinois, as sole Trustee, and hereinafter designated as Trustee, WITNESSETH:

WHEREAS, the said Members of said Congregation \*\*\* so represented by the said Committee as aforesaid, convey, assign and deliver, and concurrently herewith have and do transfer, convey, assign and deliver to the said Giuseppe M. Abbate, as sole trustee, certain personal property rights and interests described as follows:

All rights of organization of use of name, use of form of worship, publication and promulgation, all property tangible and intangible, now belonging to, or that may hereafter be acquired by said Church, etc., and property which may have been received, or which may hereafter be received by the said trustee for the purposes of this trust. The trustee has agreed and hereby does agree to issue to the Beneficiaries, and each of them, a duly executed Certificate of Membership in (the Church) \*\*\*.

\* \* \*

*First*: The Trustee in his capacity as such, shall \*\*\* conduct all business, and execute all instruments in writing, and make all other contracts, which may seem in his judgment to be proper or necessary in the performance of this Trust.

\* \* \*

No successor shall ever be named or considered as Padre Celeste. All successors shall assume and bear the name of Santo Padre, and who shall, so far as God may give them power, prosecute and carry on the heavenly tasks entrusted to the said Giuseppe Maria Abbate, and who shall have the same power to nominate and appoint a Successor as is herein given to the said Giuseppe Maria Abbate, and all subsequent successors shall be endowed with the same powers as the first successor of the said Giuseppe Maria Abbate.

*Third*: The Trustee shall hold the legal title to all property, both real and personal, tangible and intangible, at any time belonging to the Trust, and shall have and shall assume all contracts now in existence heretofore made by the said (Church)

*** and all contracts for, and obligations and liabilities incurred with, or growing out of the property assigned or transferred to him ***. *** The Trustee shall have power to acquire property, both real and personal, either by purchase or descent, and may make contracts with corporations or individuals in any form or manner, or for any purpose, which, in his judgment, shall seem advisable, looking to the promulgation and advancement of the interests of the said (Church), in which the Beneficiaries hold Certificates of Membership, as above set forth, and may institute or defend, settle or compromise actions at law, or in equity, or otherwise, and in general, to do any and all things in his judgment necessary to be done to protect the rights and interests of the Beneficiaries. He may establish branch churches, societies or congregations, at any and all places wherein, in his judgment the same may be required, and may extend financial assistance to such of said churches, societies or congregations as he may in his judgment see fit, through donations, profits, bequests, legacies or otherwise. He may engage in any lawful enterprise for profits, which in his judgment may be of advantage in furthering the objects of the Beneficiaries herein named ***. He may sell, mortgage, pledge, incumber or dispose of any of the said property rights and interests herein conveyed to him for the uses and purposes, and for the advancement of the objects and purposes for which the said (Church) was organized and exists, and it shall be the duty of the said Trustee, generally, to do any and all acts and things, which, in his judgment, shall be for the advancement of such objects and purposes. *** He shall have power to appoint an Advisory Board, with whom he may consult on all matters of material interest, but whose judgment shall not be binding upon him ***."

Notwithstanding the Church's corporate charter establishing it as a hierarchical church, and the unambiguous language of the Trust agreement giving the trustee sole and plenary control over all property involved in the operation of the Church in accordance with the trustee's judgment, the plaintiffs seek relief which is not judicially available to members of a hierarchical church and would plainly violate the Trust agreement.

In their Complaint, the plaintiffs state:

"Wherefore, (the plaintiffs) respectfully pray for the following relief:

A. An Order setting aside the named Defendant, THEODORE J. REMATT, a Trustee and President of the Corporation of the NORTH AMERICAN OLD ROMAN CATHOLIC CHURCH, et al...;

B. An order for a complete accounting by Theodore J. Rematt, et al., of all dealings, bank accounts, mortgages and other real property or personal transactions involving the Trust and its Ministries of the NORTH AMERICAN OLD ROMAN CATHOLIC CHURCH to be conducted by a disinterested third party appointed by this Court;

C. An order imposing a constructive trust upon all account receivables either currently due the Trust and/or any and all of its Ministries and those directed to the Trustee, the named Defendant THEODORE J. REMATT on the behalf of the Trust, from any person or entity;

D. An order imposing the duty of operating the needs of the Trust on a day-to-day basis upon a Court supervised Board consisting of beneficiaries of the Trust and headed by a Court appointed supervisor;

E. An order assessing the cost of bringing this action against the named Defendant THEODORE J. REMATT.

F. Such other or additional relief as this Court deems just and proper."

In addition, in one of their petitions plaintiffs state: "We ask Rev. Theodore Rematt to resign because we, the contributing supporters of (the Church), do not in any way or manner feel that he represents a prelate of the Catholic Church. In fact, he has shown himself not to be as may be proven by his current and past flagrant violations of church law and procedure."

■ It is eminently clear that the basis of this lawsuit is to have the courts examine the way the Church is managing its financial affairs; to substitute the prudence of a court's judgment for that of the trustee and Archbishop who is entrusted by Church doctrine to exercise such judgment; to impose court supervision over all financial matters of an entire religious faith; and to have a court interfere with the proper succession in the hierarchy of a religious faith. These matters, however, are beyond the realm of judicial jurisdiction.

The issues raised by plaintiffs are matters of ecclesiastical polity and as such must be addressed and answered by the Church itself rather than by the courts. The fact that property is incidentally involved does not change the nature of the issues raised by the plaintiffs. The mere assertion of a property right is not sufficient to invest courts with jurisdiction over what is essentially a religious dispute. *Galich v. Catholic Bishop* (1979), 75 Ill. App. 3d 538, 547-48, 394 N.E.2d 572, 578-79; see *St. Mark Coptic Orthodox Church v. Tanios* (1991), 213 Ill. App. 3d 700, 713, 572 N.E.2d 283, 291.

The wisdom of the first amendment of the United States Constitution is that when it comes to religious matters, religions and

religious entities should receive neither help nor hindrance from any branch of government, including the judiciary. This wisdom must be assiduously applied by courts when confronted with the kinds of allegations made by plaintiffs in this case. The trial court's order dismissing plaintiffs' Complaint was therefore proper.

■ We next address plaintiffs' contention that the trial court erred in denying their motion for substitution of judge and that their motion should have been granted for cause. Plaintiffs' motion for substitution of judge is premised on statements allegedly made by the trial court judge on January 8, 1991, and February 26, 1991. Plaintiffs' motion, however, was not filed until April 30, 1991. In the interim, the trial court judge denied two of plaintiffs' requests for injunctive relief that form substantial issues in the case. On its face, therefore, plaintiffs' motion for change of judge was properly denied as untimely. See 735 ILCS 5/2—1001 (West 1992); *Resnick v. Reznitsky* (1977), 56 Ill. App. 3d 418, 371 N.E.2d 1114; *Heerey v. Berke* (1989), 179 Ill. App. 3d 927, 534 N.E.2d 1277.

In addition, plaintiffs claim that their motion for change of judge should have been granted for cause because they established actual prejudice. Plaintiffs allege by affidavit that on January 8, 1991, the trial judge stated: "I am North American and I am Roman Catholic, so if that means anything to you." From that statement, plaintiffs extrapolate that the trial judge demonstrated a prejudice against them. It is plain, however, that the extrapolation is warrantless and lacks credence.

Prior to the motion for change of judge being filed, the trial judge had denied a motion to consolidate this case with another pending case. On February 26, 1991, when the motion to consolidate was ruled on the trial judge allegedly stated: "With respect to the motion to consolidate this case and forcible detainer action by reason of the Bishop's attempt to remove some nuns from a nunnery, I'm not disposed to consolidate the case." We are at a total loss to discern any prejudicial subtext to the trial judge's alleged statement, and plaintiffs offer nothing specific in their brief to support their claim of prejudice. The closest thing to a specific reference of prejudice in plaintiffs' brief is a statement that the trial judge's comment "showed a prejudicial attitude toward the plaintiffs' case." It follows that plaintiffs' claim of actual prejudice is totally unfounded and unsupported.

We therefore find no merit to plaintiffs' contention that the trial court erred in denying their motion for change of judge or that their motion should have been granted for cause.

Accordingly, the trial court's order dismissing this case and all other orders relating to the appeal are affirmed.

Affirmed.

GREIMAN, P.J., and CERDA, J., concur.