JIMMIE LEE SPIRES, Plaintiff-Appellant, v. MOONEY MOTORS, INC., Defendant-Appellee.

Fourth District   No. 4—91—0742

Opinion filed June 18, 1992.

918

Gary J. Stokes, of Georgetown, for appellant.

Gregory G. Lietz, of Hutton, Laury, Hesser, Lietz & Wilcox, of Danville, and Richard M. Kash, Jr., of Fruin, Garst & Piper, of Paris, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On April 10, 1989, plaintiff Jimmie Lee Spires brought suit in the circuit court of Edgar County against defendant Mooney Motors, Inc. He sought damages for injuries he received when, with defendant's permission, he was using defendant's tire-changing machine to place a tire on a rim of a vehicle belonging to him. He charged defendant with negligence. On May 24, 1991, plaintiff filed a motion

pursuant to sections 2—604.1 and 2—616 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, pars. 2—604.1, 2—616) asking leave to file an additional count charging wilful and wanton conduct and seeking punitive damages.

■ Section 2—616 of the Code contains the traditional requirements for obtaining leave to amend pleadings. Section 2—604.1 of the Code is a comparatively new provision which "represents an effort to discourage the seeking and the award of punitive damages" (Ill. Ann. Stat., ch. 110, par. 2—604.1, Historical and Practice Notes, at 14 (Smith-Hurd Supp. 1991)). Section 2—604.1 of the Code states:

"Pleading of punitive damages. In all actions on account of bodily injury or physical damage to property, based on negligence, or product liability based on strict tort liability, where punitive damages are permitted[,] no complaint shall be filed containing a prayer for relief seeking punitive damages. However, a plaintiff may, pursuant to a pretrial motion and after a hearing before the court, amend the complaint to include a prayer for relief seeking punitive damages. The court shall allow the motion to amend the complaint *if the plaintiff establishes at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages.* Any motion to amend the complaint to include a prayer for relief seeking punitive damages shall be made not later than 30 days after the close of discovery." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 110, par. 2—604.1.

After holding a hearing pursuant to section 2—604.1 of the Code, Circuit Judge Ralph Pearman overruled objections to the motion to amend and allowed the motion, and the proposed amended count was allowed to be filed. Subsequently, defendant filed a motion for summary judgment as to both the original negligence count and the wilful and wanton count seeking punitive damages. Plaintiff filed a motion asking that the summary judgment motion be dismissed as to the count seeking punitive damages, maintaining that such a ruling would be inconsistent with the prior ruling of Judge Pearman that a sufficient showing of likelihood of success of the wilful and wanton count had been shown.

After a hearing, Circuit Judge Richard E. Scott entered an order on October 4, 1991, denying plaintiff's motion to dismiss and allowing defendant's motion for summary judgment as to the wilful and wanton count seeking punitive damages and as to a subparagraph of the negligence count. The court made a finding pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) sufficient to make

the summary judgment as to the wilful and wanton count appealable. Plaintiff has appealed. We affirm.

Plaintiff's contentions on appeal are twofold. He maintains that the circuit court's earlier determination of the existence of "a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages" (Ill. Rev. Stat. 1989, ch. 110, par. 2—604.1)—inherent in its ruling under section 2—604.1 of the Code—is so inconsistent with summary judgment for the defense on the count seeking punitive damages that the entry of summary judgment was precluded as a matter of law. Plaintiff also maintains that the record before the court when it granted summary judgment revealed at least one material issue of fact which needed to be decided by the trier of fact. We disagree.

Examining first the effect of section 2—604.1 of the Code, we note no Illinois case has dealt directly with the question of whether an earlier court order permitting the filing of a count for punitive damages prevents the later entry of summary judgment against that plaintiff on that count. Four other States have similar requirements which must be met prior to being permitted to plead for punitive damages: Florida (see Fla. Stat. Ann. §768.72 (West Supp. 1992)), Idaho (see Idaho Code §6—1604(2) (1990)), Minnesota (see Minn. Stat. Ann. §549.191 (West 1988)), and North Dakota (N.D. Cent. Code §32—03.2—11, at 131 (Supp. 1991)). The issue before us here has not been addressed in any of these States.

■ Our analysis of the effect of a section 2—604.1 order permitting the filing of a punitive damages count begins with the recognition that such an order is interlocutory. No appeal can be taken from the order except by the combined action of the trial court and the appellate court pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308). The order is similar to an order denying a request for summary judgment which has similar limitations upon appealability. (*Rowe v. State Bank* (1988), 125 Ill. 2d 203, 213-14, 531 N.E.2d 1358, 1363.) Ordinarily, the denial of a motion for summary judgment does not preclude a court from later changing its position and granting that same motion. (*Rowe*, 125 Ill. 2d at 213-14, 531 N.E.2d at 1363; *Tracy v. Montgomery Ward & Co.* (1990), 193 Ill. App. 3d 304, 549 N.E.2d 984.) The exception to that rule occurs when different judges make the two rulings and the record indicates the prevailing party was able to obtain a favorable judge by manipulation. *Rowe*, 125 Ill. 2d at 214, 531 N.E.2d at 1363; *Tracy*, 193 Ill. App. 3d at 307, 549 N.E.2d at 986.

■ As we have indicated, Judge Pearman made the ruling permitting the filing and Judge Scott granted the summary judgment. However, the record indicated that the case had originally been assigned to Judge Scott. Thus, his hearing the motion for summary judgment clearly was not the result of "judge shopping" or any kind of manipulation. Thus, even if the ruling on the summary judgment motion can be deemed inconsistent with the earlier section 2—604.1 ruling, the summary judgment ruling was not improper for that reason. The circuit court has great discretion with respect to changing interlocutory rulings during the course of a proceeding. The entry of summary judgment here is not rendered erroneous simply because of the prior entry of a section 2—604.1 ruling permitting the filing of the count seeking punitive damages.

The ruling on the summary judgment must nevertheless stand upon its own merits. We next examine whether the summary judgment on appeal meets that test. A motion for summary judgment should only be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); see also *Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.) In deciding whether to grant summary judgment, a court shall construe the pleadings, affidavits, depositions, admissions, and exhibits strictly against the movant and liberally in favor of the opponent. When this is done and the record indicates all the evidence is before the court and no judgment for the respondent to the motion could ever stand, the court should grant the motion for summary judgment. (*Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535; *Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.) We conclude such was the case here.

Before we examine the affidavits and other factual matter upon which the summary judgment for defendant was based, consideration of the allegations of the wilful and wanton count is appropriate. For the most part, the wilful and wanton count repeated the allegations of the negligence count but described the conduct of the defendant as wilful and wanton rather than negligent. The wilful and wanton count alleged that on November 5, 1988, defendant operated an automobile service and repair business in Chrisman in Edgar County, and owned and operated the tire changer which was involved in plaintiff's injury and which defendant allowed plaintiff, one

of its employees, to use during his lunch hour, to place a tire defendant had given him onto a rim belonging to him.

Specifically, plaintiff alleged defendant was wilful and wanton in (1) allowing persons to use the machine without adequate supervision; (2) allowing persons to use the machine without adequate training or education; (3) allowing persons to use the machine without adequate instruction as to safety procedures; (4) failing to warn persons using the machine to remain out of the direction of the tire trajectory when operating the machine; (5) failing to warn persons using the machine that use of the machine could result in serious injury or death; (6) failing to warn persons using the machine that the machine had a history of malfunction; (7) failing to inspect the machine when the defendant knew, or should have known, that the machine had malfunctioned before; (8) failing to repair or replace the machine prior to plaintiff's use of machine when defendant knew, or should have known, that the machine had broken earlier; (9) failing to install safety shields or cages to protect persons using or operating the machine; and (10) providing plaintiff with old and used tires and rims when defendant knew, or should have known, that said tires and rims presented a greater risk of serious injury or death when mounting or demounting.

Taking the affidavits and depositions upon which the summary judgment was based most favorably to plaintiff, the following facts and sequence of events was set forth. Plaintiff's injury occurred during his lunch break on November 3, 1988, after he had been employed by defendant for approximately one month. A supervisory employee of defendant permitted plaintiff to choose and take a tire from a group of tires which were in the basement of the shop and to use the tire machine to put the tire on plaintiff's rim. The supervisory employee knew many of these tires had been damaged in transit and should not be used but directed plaintiff to look for and take a tire which appeared to be good. Although use of the tire machine was one of plaintiff's assignments, he had been given instruction in its use for only a period of less than two minutes and had only used it a few times.

The following additional significant facts were set forth in the affidavits and depositions when viewed most favorably to plaintiff. The tire-changing machine had various warnings inscribed upon it, but plaintiff had read only that on the top which stated, "Important, please release chucks as soon as beads are fairly sealed." The "chucks" were bolts used to secure the wheel rims to the tire-changing machine. Plaintiff selected a tire which appeared best to

him. It had a 16-inch radius while that of his rim was 16½ inches. Plaintiff asked a more senior employee, Burgess, if he could put such a tire on a rim with a half-inch greater radius, and the employee suggested he could try to do so.

According to the described affidavits and depositions, the explosion of the tire occurred after plaintiff (1) attached the rim to the machine; (2) placed the tire on the rim; (3) inflated the tire to a pressure of approximately 26 pounds, at which time it appeared to bond to the rim; (4) plaintiff then continued to inflate the tire whereupon it exploded, broke a bolt and the tire and rim hit plaintiff in his face. While no testimony was presented that the machine had operated in this manner before, at least two incidents were reported in which the "chuck" bolts had broken while the tire changer was in use. Suggestion had been made to defendant that some sort of screen should be obtained for the tire-changing machine but defendant essentially rejected the advice on the basis such a shield was unnecessary. No showing was made as to how the shield would operate but presumably it would be between the operator and the tire and rim he was working with.

Thus, any wilful and wanton conduct would have to arise from one or more of the following acts of the defendant: (1) the permission to use the machine was given plaintiff when defendant knew plaintiff had little experience in its operation; (2) defendant knew or should have known that a bolt on the machine had previously broken; (3) defendant gave plaintiff a tire which was likely defective and permitted him to attempt to use the tire changer without a shield when such a shield would have been possible to install. At oral argument on appeal, plaintiff insisted that defendant owed plaintiff a greater duty because he was an employee of defendant, but he has not presented any authority on that point.

■ Because of the punitive effect of exemplary damages, the supreme court has often stated that they are not favored (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 188, 384 N.E.2d 353, 360; *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 35, 330 N.E.2d 509, 511), but the degree of culpability required to constitute grounds for such damages has not been stated with precision until recently in *Loitz v. Remington Arms Co.* (1990), 138 Ill. 2d 404, 563 N.E.2d 397. There, a circuit court permitted an award of punitive damages against a gun manufacturer in favor of a user injured by a barrel explosion. The crux of the award arose because the manufacturer had continued its manufacture of the gun after over 90 complaints of insufficiency of the strength of the barrel.

In *Loitz*, a divided court reversed the award of punitive damages. In a comprehensive opinion by Justice Miller, the majority gave recognition to the greater concern about the frequency and amount of such awards and then explained:

> " 'Since the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence, these damages can be awarded only for conduct for which this remedy is appropriate—which is to say, *conduct involving some element of outrage similar to that usually found in crime.* The conduct must be outrageous, either because the defendant's acts are done with an *evil motive* or because they are done with *reckless indifference* to the rights of others.' (Restatement (Second) of Torts §908, comment *b*, at 464-65 (1979).) In this context, willful and wanton misconduct ' "approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it." ' *Bresland v. Ideal Roller & Graphics Co.* (1986), 150 Ill. App. 3d 445, 457[, 501 N.E.2d 830, 839]." (Emphasis added.) *Loitz*, 138 Ill. 2d at 415-16, 563 N.E.2d at 402.

■ Here, giving full significance to the most culpable interpretation of any misdeed of defendant shown, we do not find that conduct to involve either the "evil motive" or the "reckless indifference" necessary as a basis for punitive damages. Clearly, the conduct does not produce "outrage similar to that usually found in crime." Accordingly, we agree that the proof offered in support of the punitive damages count would clearly be insufficient to support such an award. The circuit court properly granted summary judgment on that count. We affirm that ruling.

Affirmed.

STEIGMANN and COOK, JJ., concur.