RANDALL EUGENE SANK, Adm'r of the Estate of Leslie J. Sank, Deceased, on Behalf of the Heirs of Leslie J. Sank, Plaintiff-Appellant, v. PAUL J. POOLE *et al.*, Defendants-Appellees.

Fourth District    No. 4—91—0870

Opinion filed June 29, 1992.

Patrick J. O'Hara, of Petersburg, for appellant.

Judge & James, Ltd., of Park Ridge (Jay S. Judge and Kristine A. Karlin, of counsel), for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On May 5, 1989, plaintiff Randall Eugene Sank, as administrator of the estate of Leslie J. Sank, deceased, filed an action in the circuit court of Logan County against defendants Paul J. Poole and the Village of Middletown (Village). Plaintiff sought damages for the wrongful death of Leslie Sank which occurred after decedent's automobile left the road and rolled over at a curve. A first-amended complaint alleged Poole, acting as the Village police chief, was guilty of negligence and wilful and wanton conduct in attempting to stop decedent's automobile and then pursuing her just prior to the time her vehicle overturned, and the Village was negligent in hiring and retaining the police chief.

Defendants moved for summary judgments maintaining (1) proof was lacking that any conduct attributable to defendants was a proximate cause of the decedent's loss of control of the automobile she was driving; (2) defendants are immune from liability for any conduct shown by virtue of section 4—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev. Stat. 1989, ch. 85, par. 4—102); (3) Poole was not shown to be guilty of any wilful and wanton misconduct which was a proximate cause of the decedent's death and thus was immune from liability by the terms of sections 2—202 and 2—204 of the Act (Ill. Rev. Stat. 1989, ch. 85, pars. 2—202, 2—204).

On October 21, 1991, the court granted defendants' motion for summary judgments on the basis that the documents before the court negated, as a matter of law, any determination that Poole's conduct was a proximate cause of the overturning of decedent's car. Plaintiff has appealed. A judgment of the circuit court may be sustained on review on any ground justified by the record. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 457 N.E.2d 9.) We hold that the record showed conclusively that defendants were immune under various provisions of the Act from any liability otherwise shown. Accordingly, we need not decide whether a sufficient showing of proximate cause was made. We affirm.

The evidence presented at the hearing on the motion for summary judgments consisted of the affidavit and deposition testimony of defendant Poole and various witnesses to a pursuit by Poole of Leslie Sank's automobile through the streets of the Village of Middletown. There were no witnesses to the Sank vehicle leaving the road. Expert testimony by deposition concerning proper police procedures was presented.

Paul Poole indicated the following in a deposition: (1) he was the police chief of the Village on January 21, 1989, the date of the accident; (2) on that date, at approximately 9 p.m. Poole observed decedent driving her automobile near where he was parked in an unmarked squad car; (3) he observed sparks coming from underneath the vehicle, heard a dragging noise and noted the vehicle was being driven approximately nine miles over the speed limit; (4) he pulled out and began to follow the Sank vehicle, about a half block behind, without activating his lights or siren; (5) he intended to advise the driver about the muffler dragging and sparking; (6) the Sank vehicle made a right turn, Poole followed, and after the turn, the Sank vehicle accelerated; (7) Poole then accelerated and activated his lights and siren; (8) as he came closer to the Sank vehicle, with his emergency lights and siren on, the Sank vehicle accelerated rather than slowed; (9) the two cars circled a city block twice; and (10) he was 2½ car lengths behind and traveling 35 miles per hour when he contacted Logan County by radio that he was involved in a chase-pursuit.

Poole said that when he rounded the corner, he pulled the squad car next to the Sank vehicle, and the two cars collided. He said he stopped and got out of his car, and the Sank vehicle backed up and went around him. Poole returned to his car and continued the pursuit but noticed he was getting a flat tire. He said they went around the block a third time, but the Sank vehicle was pulling away, because of the flat tire. Poole indicated he stopped his car at the edge of town

because his car became completely disabled due to the flat tire, and the Sank vehicle kept going down a country road, known as the "New Holland blacktop" road. Poole said he glanced in the direction the other car was headed, but he did not see anything unusual happen to the car. He did not see the car leave the road where the road curved sharply to the right. He was subsequently picked up by William Jones, an auxiliary police officer for Logan County and part-time officer in the Village of Niantic. Poole said he was wearing a police uniform, but he could not remember if he was wearing a black leather jacket at the time of the pursuit. He said the jacket did not have a police insignia on it.

William Jones testified in a deposition that he had been listening to his police scanner radio in his home on the night of January 21, 1989, and he heard that Poole was involved in a pursuit and his car had been "rammed." He said he was concerned about Poole's safety and went looking for him. He found Poole with his disabled squad car at the edge of the Village. Jones said they discussed the "high rate" of speed of the Sank vehicle and questioned whether the vehicle would have been able to negotiate a curve in the road that was three-quarters of a mile away. At that time, he did not know the car had overturned at that location, and they could not see the curve from where Poole was stopped. Jones indicated he and Poole drove to the curve in the road and observed the Sank vehicle overturned with smoke coming from the underside of the car.

Several of the pre-occurrence witnesses who observed the pursuit through the Village indicated the cars were traveling at a high rate of speed and circled a city block at least twice. Those witnesses said Poole had his siren and lights on, and the Sank vehicle was driving erratically. They said the cars did not stop at stop signs. One witness, however, said the Sank vehicle was not going very fast, and was driving safely, including using turn signals, but that the squad car was being driven erratically.

In addition to details about the pursuit and the overturning of the decedent's vehicle, Poole's discovery deposition revealed the following: (1) the Village is approximately 13 blocks in area; (2) prior to becoming chief of police, Poole was the mayor of the Village and president of the Village board of trustees; (3) as mayor, he and the trustees determined that the Village needed a police officer; (4) Poole resigned as mayor approximately five months before the accident, and the board of trustees appointed him the chief of police; (5) the job was part-time, and Poole was the Village's only police officer; (6) he had no formal police training, but he had firearms and military training;

(7) the Village purchased a new, unmarked police squad car for Poole to use; and (8) the Village made a formal decision not to have a marked police car, but it was equipped with a siren and flashing police or emergency lights. Poole also admitted he had been convicted of a felony for delivery of a controlled substance in 1976 and was sentenced to a term of one to four years' incarceration.

The evidence was undisputed that the decedent's vehicle overturned while negotiating a curve on the New Holland Road which was three-quarters of a mile from where Poole had stopped the squad car.

"If [as here] what is contained in the papers on file would constitute all of the evidence before a court and would be insufficient to go to a jury [a summary judgment is required]. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587[, 272 N.E.2d 497, 500].)" (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358, 543 N.E.2d 1304, 1308.) Based upon the papers presented here we hold (1) defendant Poole could be liable only if his conduct was wilful and wanton; (2) no evidence presented created an inference that Poole's conduct was wilful and wanton; (3) defendant Village could only be vicariously liable if Poole was liable; and (4) the Village was immune from liability in regard to hiring Poole.

■ Plaintiff makes contentions that Poole was not properly appointed, but in count III to his first-amended complaint, plaintiff alleges the Village "hired and retained" Poole as a police officer although he was not eligible for such an appointment. This allegation was not made in the alternative. (See Ill. Rev. Stat. 1989, ch. 110, par. 2—613(b).) He was, at least, a *de facto* officer. (*City of West Frankfort v. Industrial Comm'n* (1950), 406 Ill. 452, 94 N.E.2d 413.) Thus, Poole was entitled to such immunity as is given to a public employee. Section 2—202 of the Act states that "[a] public employee is not liable for his act or omission *in the execution or enforcement of any law* unless such act or omission constitutes willful and wanton conduct." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 85, par. 2—202.) The requirement that the conduct occur "in the execution or enforcement of any law" must be considered in the light of the limited applicability placed on that phrase by the supreme court in *Aikens v. Morris* (1991), 145 Ill. 2d 273, 583 N.E.2d 487.

In *Aikens*, a plaintiff recovered a judgment against a police officer for injuries she received when a squad car driven by the police officer struck her automobile while the squad car was transporting prisoners. Only negligence was charged against the officer. The thrust of the decision was that a police officer is not executing or enforcing a law merely because he is on duty performing such routine functions as in-

volved there. The court noted that its decision in *Arnolt v. City of Highland Park* (1972), 52 Ill. 2d 27, 282 N.E.2d 144, and various appellate decisions were consistent with its holding. The *Aikens* court distinguished the situation there from the facts in *Fitzpatrick v. City of Chicago* (1986), 112 Ill. 2d 211, 492 N.E.2d 1292, and *Thompson v. City of Chicago* (1985), 108 Ill. 2d 429, 484 N.E.2d 1086, where police officers were held to have been acting to execute or enforce the law and thus subject to section 2—202 immunity.

In *Fitzpatrick*, the defendant police officer came upon a traffic collision on the Stevenson Expressway in the City of Chicago. One of the vehicles came to rest partially on a median strip between the traffic lanes of the highway. The officer parked his squad car behind that car, with emergency lights on, but possibly slightly within a lane of traffic. The plaintiff was injured when an oncoming vehicle hit the squad car. In *Thompson*, the officer had been directed to drive to the International Amphitheater, where a break-in appeared imminent. Upon arrival, the officer found a large crowd had gathered and proceeded slowly through it. Upon being pelted with rocks, he decided to withdraw and, while backing up, the squad car hit a pedestrian. Here, the conduct of defendant Poole was even less routine than that in *Fitzpatrick* or *Thompson* because, however minor the misconduct of the decedent might have been, Poole was clearly executing and enforcing the law in attempting a stop or arrest.

The record conclusively showed that under section 2—202 of the Act, defendant Poole was entitled to immunity unless his conduct was wilful and wanton. In *Laco v. City of Chicago* (1987), 154 Ill. App. 3d 498, 507 N.E.2d 64, and *Breck v. Cortez* (1986), 141 Ill. App. 3d 351, 490 N.E.2d 88, the reviewing courts affirmed awards of summary judgment to police officers charged with wilful and wanton misconduct in engaging in high-speed chases which resulted in injuries to persons injured by the fleeing vehicle. In *Laco*, the car being chased turned out to be stolen and the driver eventually drove very recklessly. However, when initiating the chase, the officer did so only because he had seen the vehicle driving the wrong way on a one-way street. In *Breck*, the chase was initiated after the officer had witnessed very reckless driving by the driver being chased. In both cases, the chases took place in areas much more crowded than the Village here.

The foregoing decisions were rendered prior to the decision in *Loitz v. Remington Arms Co.* (1990), 138 Ill. 2d 404, 563 N.E.2d 397, which placed strict requirements upon the proof necessary to establish wilful and wanton misconduct. There, in a products liability case, a

plaintiff had recovered against a gun manufacturer (1) compensatory damages on a count charging negligence, and (2) punitive damages on a count charging wilful and wanton misconduct. The injuries arose when a shotgun manufactured by the defendant exploded. The evidence indicated the manufacturer was aware of some 94 prior barrel explosions of that type of gun amounting to an explosion in the barrel of .003% of those guns sold. The supreme court upheld the judgment of compensatory damages on the negligence count but reversed the judgment on the wilful and wanton count upon which punitive damages were awarded.

In explaining the *Loitz* decision, the court stated:

"The present action was submitted to the jury on allegations of both negligence and willful and wanton misconduct. It must be recognized, however, that '[n]egligence is not the same as wantonness' (*Quad County Distributing Co. v. Burroughs Corp.* (1979), 68 Ill. App. 3d 163, 166, and that '[p]unitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence' (Restatement (Second) of Torts §908, comment *b*, at 465 (1979)). 'Since the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence, these damages can be awarded only for conduct for which this remedy is appropriate—which is to say, conduct involving some element of outrage similar to that usually found in crime. The conduct must be outrageous, either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the rights of others.' (Restatement (Second) of Torts §908, comment *b*, at 464-65 (1979).) In this context, willful and wanton misconduct ' "approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it." ' *Bresland v. Ideal Roller & Graphics Co.* (1986), 150 Ill. App. 3d 445, 457." *Loitz*, 138 Ill. 2d at 415-16, 563 N.E.2d at 402.

■ Particularly in view of the strict requirements of wilful and wanton conduct set forth in *Loitz*, we do not find any aspect of Poole's conduct, which could have been a proximate cause of the decedent's overturning her car, was wilful and wanton. He saw that the decedent had something dragging from her vehicle and she was driving quite fast. He tried to stop her but a chase ensued. Because of the minor nature of the decedent's misconduct, a chase through and around the Village may have been unwise. Indeed, Poole's conduct

was severely criticized in the deposition of Thomas Walton, a City of Chicago police captain who was listed as an expert by plaintiff.

Captain Walton testified he had over 20 years' experience in law enforcement, a master's degree in labor relations, and a certificate as a police science instructor which he said was issued by "the Cook County Superintendent of Education's Office." He stated that the accepted policy on the question of whether a law enforcement officer should engage in an automobile chase of a suspected offender is that a chase is justified only when the need of apprehension outweighs the danger to the suspect or others. He expressed an opinion that, here, the dangers involved far outweighed the need for apprehension of one who was only speeding and driving an impaired automobile.

Walton concluded from the information given him that Poole had bumped the decedent's vehicle. He deemed this a very bad practice. He also stated that Poole had been in error in not using a loud speaker to ask the decedent to stop before he turned his lights upon her. Walton concluded that Poole had scared the decedent and thus caused her to speed away. He also concluded that Poole had not given the decedent sufficient indication that he was a police officer. He described Poole's conduct as showing "a conscious indifference and utter disregard for the safety of [the decedent] and that he was willful in doing so and wanton."

We cannot accept Walton's testimony as describing wilful and wanton conduct within the requirements of *Loitz*. Undisputedly, Poole had flashed his red light. Neither his decision to chase her nor the manner in which he did so can be said to approach the infliction of "deliberate harm" nor do they indicate "a reckless indifference to the rights of" the decedent. One witness testified that as the chase developed, Poole was driving erratically as he drove behind the decedent, but that would not have been a reason why she refused to stop and continued to flee.

The conclusive showing that Poole was not guilty of any wilful and wanton misconduct which was a proximate cause of the decedent's death grants him immunity from liability pursuant to section 2—202 of the Act. Section 2—109 of the Act provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee *where the employee is not liable*." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 85, par. 2—109.) Thus, the Village is not liable for any conduct of Poole in chasing the decedent.

■ Finally, we face plaintiff's claim in count III of his amended complaint that the Village is liable for negligence in hiring or retaining Poole. The liability sought here is not vicarious arising from the

doctrine of *respondeat superior*. However, the immunity granted a local public entity by section 2—109 of the Act is not limited to such vicarious liability. (*Melbourne Corp. v. City of Chicago* (1979), 76 Ill. App. 3d 595, 604, 394 N.E.2d 1291, 1298.) Any injuries to the decedent resulting from the Village's hiring or retaining Poole "result[ed] from an act or omission" of Poole even though the liability claimed is not vicarious. Thus, section 2—109 of the Act grants the Village immunity under count III as well as the other counts.

Accordingly, we hold the entry of summary judgment for the two defendants was properly granted. We affirm that judgment.

Affirmed.

STEIGMANN and LUND, JJ., concur.