CHARLOTTE S. YURETICH, as Special Adm'r of the Estate of Peter Yuretich, Deceased, Plaintiff-Appellant, v. THOMAS V. SOLE et al., Defendants (The Village of Dwight et al., Defendants-Appellees).

Fourth District   No. 4—93—0344

Argued September 27, 1993.—Opinion filed March 10, 1994.

GREEN, J., specially concurring.

John J. Lowrey (argued), of Lowrey & Smerz, Ltd., of Chicago, for appellant.

Eugene P. Daugherity (argued), of Myers, Daugherity, Berry & O'Conor, Ltd., of Ottawa, for appellee Dwight Fire Protection District.

John E. Cassidy III (argued), of Cassidy & Mueller, of Peoria, for other appellees.

JUSTICE COOK delivered the opinion of the court:

Emergency medical services personnel (EMTs) and their sponsoring organizations are granted immunity from liability for negligence by section 17 of the Illinois Emergency Medical Services (EMS) Systems Act (Ill. Rev. Stat. 1991, ch. $111^1/_2$, par. 5517), and section 1 of the Law Enforcement Emergency Care Act (Ill. Rev. Stat. 1991, ch. 70, par. 61). The four counts considered on this appeal alleged wilful and wanton conduct in providing emergency medical services, but the trial court found them insufficient and granted defendants' motions to dismiss. We reverse and remand.

Peter J. Yuretich was involved in an automobile accident on November 25, 1990, which resulted in his death. Defendants, the Village of Dwight, the Village of Dwight Ambulance Service, and the Dwight Fire Protection District, provide emergency response services and were called to the scene. Counts III and IV of plaintiff's third-amended complaint allege wilful and wanton misconduct by the Village of Dwight and the Village of Dwight Ambulance Service. Counts VII and VIII allege wilful and wanton misconduct by the Dwight Fire Protection District. The trial court dismissed the counts based on their failure to state a cause of action and made a Rule 304(a) finding there was no just reason for delaying enforcement or appeal. 134 Ill. 2d R. 304(a).

Count III alleged (1) the EMTs administered cardiopulmonary resuscitation (CPR) while decedent remained in the driver's seat, without placing him in a horizontal position, in violation of applicable standards; (2) the EMTs decided to stop treating decedent without transferring him to a medical facility; (3) the EMTs declared decedent dead and stopped giving emergency care without any legal authority to do so; (4) the EMTs declared decedent dead and stopped emergency care without contacting a hospital; (5) the EMTs failed to extricate decedent from his car before administering emergency care, declaring him dead and stopping emergency care; and (6) the EMTs were guilty

of a number of other similar acts and omissions. All the foregoing acts and omissions were alleged to have been committed with conscious disregard for the safety of decedent and to have been a proximate cause of his injury and death. The count sought recovery for the pecuniary loss suffered by plaintiff, as decedent's special administrator, and for the loss of society suffered by plaintiff as decedent's wife. Count IV repeated the allegations of count III, and sought recovery for decedent's pain and suffering, lost profits and activities, and medical expenses. Counts VII and VIII similarly alleged that the Fire Protection District stopped its attempts to extricate decedent while he was still alive and were guilty of other acts or omissions such as failure to have appropriate extrication equipment, abandonment, and failure to have and follow appropriate procedures.

To sufficiently plead wilful and wanton misconduct, a plaintiff must allege either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff. *Adkins v. Sarah Bush Lincoln Health Center* (1989), 129 Ill. 2d 497, 518, 544 N.E.2d 733, 743; *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 448, 593 N.E.2d 522, 530; Ill. Rev. Stat. 1989, ch. 85, par. 1—210.

A complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved under the allegations which would entitle the party to relief. (*Meerbrey v. Marshall Field & Co.* (1990), 139 Ill. 2d 455, 473, 564 N.E.2d 1222, 1230; *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 565 N.E.2d 654.) That approach cannot be carried to an extreme, however; under a notice pleading it might be possible to prove facts entitling a party to relief, but Illinois is not a notice-pleading State. (See *Teter v. Clemens* (1986), 112 Ill. 2d 252, 256, 492 N.E.2d 1340, 1342.) Where facts of necessity are within defendant's knowledge and not within plaintiff's knowledge, a complaint which is as complete as the nature of the case allows is sufficient. (*City of Chicago v. Larson* (1961), 31 Ill. App. 2d 450, 453, 176 N.E.2d 675, 676-77; *People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 145, 435 N.E.2d 463, 467 ("[c]onspiracies by their very nature do not permit plaintiffs to allege all the details of the defendants' conduct").) Wilful and wanton conduct involves a matter of degree, where a hard and thin line definition should not be attempted. Whether or not there has been wilful and wanton conduct in any given case necessitates close scrutiny of the facts as disclosed by the evidence. (*Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 430, 412 N.E.2d 447, 457; *O'Brien v. Township High School District*

*214* (1980), 83 Ill. 2d 462, 469, 415 N.E.2d 1015, 1018.) Allegations of wilful and wanton misconduct will not fail simply because they mirror allegations for negligence and merely change the state of mind. (*O'Brien*, 83 Ill. 2d at 468-69, 415 N.E.2d at 1018; *Bowers v. Du Page County Regional Board of School Trustees District No. 4* (1989), 183 Ill. App. 3d 367, 380, 539 N.E.2d 246, 255; *cf. Adkins*, 129 Ill. 2d at 519-20, 544 N.E.2d at 743-44.) "The generality of this approach implies a relative liberality with regard to the precision with which willful and wanton misconduct must be pleaded." 3 R. Michael, Illinois Practice § 24.8, at 386 (1989) (Civil Procedure Before Trial).

There is a reasonable explanation for the conduct of the EMTs in this case: they administered CPR without extricating decedent because they believed that if they did not he would die before they got him out of his car; they eventually stopped treating him because they believed he was dead. However likely that explanation might be, a trial court may not dismiss a complaint on the basis of what is likely to have happened. It is possible that facts could be proved under these allegations which would entitle plaintiff to relief. If plaintiff was able to offer evidence that the EMTs stopped treating decedent because they were in a hurry to get somewhere else, for example, that evidence might support a verdict of wilful and wanton conduct and the complaint could not have been pleaded any better. The complaint here specifically alleges defendants stopped treating decedent and stopped attempts to extricate him while he was still alive. As unlikely as that seems, we must accept those allegations as true. (*Burdinie*, 139 Ill. 2d at 504-05, 565 N.E.2d at 657.) Meritless litigation should be brought to a conclusion as soon as possible, but where merit is dependent upon the facts, a motion for summary judgment and not a motion to dismiss is the procedure which must be employed. (See *Spires v. Mooney Motors, Inc.* (1992), 229 Ill. App. 3d 917, 595 N.E.2d 225 (wilful and wanton count dismissed on summary judgment); *Sank v. Poole* (1992), 231 Ill. App. 3d 780, 596 N.E.2d 1198 (wilful and wanton count dismissed on summary judgment).) Motions for summary judgment can only be granted after discovery is taken, and may entail additional expense, but the trial court has the power to limit initial discovery to an issue which may be dispositive.

In *Adkins*, a doctor claimed hospital committees were guilty of wilful and wanton misconduct when they suspended his hospital privileges. The supreme court affirmed dismissal of that count on the basis it simply characterized the conduct as wilful and wanton and did not allege additional facts which, if proved, would show that

defendants acted or failed to act with an utter indifference or conscious disregard for plaintiff's rights. (*Adkins*, 129 Ill. 2d at 519-20, 544 N.E.2d at 743-44.) Importantly, the court noted the doctor did not contend there was actual prejudice on the part of the members of the committees. The court distinguished other cases where members of the review committee had previously been named by the doctor as defendants in a lawsuit, or where the physician who filed the charges also sat on the review committee. (*Adkins*, 129 Ill. 2d at 512, 544 N.E.2d at 740.) In the *Adkins* situation it may be that external manifestations would have been present which should have been pleaded, and plaintiff was not being asked to plead something exclusively in the mind of defendants. See also *Teter*, 112 Ill. 2d at 258-60, 492 N.E.2d at 1343-44 (where plaintiffs in pleading the negligent entrustment of a pellet gun were not allowed to allege the gun was kept in a place accessible to the reach of a grandchild but were required to allege where the gun was kept and how the grandson happened to have possession of it).

■ In reaching its decision the trial court here relied on *Burke*, where the supreme court held that a plaintiff's negligence could not be compared, for purposes of comparative negligence, with a defendant's wilful and wanton misconduct. *Burke* noted there is a qualitative difference between wilful and wanton misconduct and negligence, a difference recognized over the years by both statutory and case law. *Burke*, 148 Ill. 2d at 450, 593 N.E.2d at 531.

Wilful and wanton counts are sometimes alleged to support punitive damages. In other cases such as this one, where there is no liability for negligence, such allegations are required simply to establish liability. Before the advent of comparative negligence, wilful and wanton counts were also used to escape the bar of contributory negligence. Different approaches to wilful and wanton misconduct may be taken in these different situations. The supreme court has often stated that punitive damages are disfavored. (See *Spires*, 229 Ill. App. 3d at 923, 595 N.E.2d at 229 (and cases cited therein); Ill. Rev. Stat. 1991, ch. 110, par. 2—604.1 (punitive damages may not be sought in original complaint, but only after motion to amend and a showing of a reasonable likelihood of proof).) In *Loitz v. Remington Arms Co.* (1990), 138 Ill. 2d 404, 415-16, 563 N.E.2d 397, 402, the supreme court held as follows:

> " 'Since the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence, these damages can be awarded only for conduct for which this remedy is appropriate—which is to say, *conduct involving some element of outrage similar to that usually found in crime.* The

conduct must be outrageous, either because the defendant's acts are done with an *evil motive* or because they are done with *reckless indifference* to the rights of others.' (Restatement (Second) of Torts § 908, comment *b*, at 464-65 (1979).) In this context, willful and wanton misconduct ' "approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it." ' *Bresland v. Ideal Roller & Graphics Co.* (1986), 150 Ill. App. 3d 445, 457[, 501 N.E.2d 830, 839]." (Emphasis added.)

In *Burke*, the court quoted *Loitz* for the proposition that wilful and wanton misconduct approaches the degree of moral blame attached to intentional harm. (*Burke*, 148 Ill. 2d at 448, 593 N.E.2d at 530, citing *Loitz*, 138 Ill. 2d at 416, 563 N.E.2d at 402.) Nevertheless, *Burke* did not equate cases where wilful and wanton allegations are necessary for liability with the disfavored punitive damages cases. *Burke* noted that in the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 1—101 *et seq.*) the legislature balanced its dual interest in protecting municipalities and protecting people, and did not intend to shield municipalities from liability for wilful and wanton misconduct. (*Burke*, 148 Ill. 2d at 443, 593 N.E.2d at 528.) *Burke* supported its holding in part because its holding would serve as a deterrent to a municipal defendant's wilful and wanton misconduct. We conclude that the wilful and wanton allegations found in cases such as this are not particularly disfavored, in contrast to wilful and wanton allegations which support claims for punitive damages. At any rate, *Burke* did not involve a motion to dismiss and did not discuss the requirements for pleading a wilful and wanton count, and we do not consider it to be inconsistent with our decision here. Defendant argues that wilful and wanton claims are more burdensome since *Burke*, because damages can no longer be reduced on account of a plaintiff's negligence. We do not see that as a reason to change the requirements for pleading wilful and wanton misconduct.

■ We next consider the fact that the trial court refused to allow discovery prior to ruling on the motion to dismiss. A plaintiff must possess a minimum level of information indicating defendant is liable to him before he commences litigation and forces defendant to undergo discovery. Otherwise plaintiff is engaged in a "fishing expedition," a recognized form of litigation abuse. (*Computer Teaching Corp. v. Courseware Applications, Inc.* (1990), 199 Ill. App. 3d 154, 157, 556 N.E.2d 816, 818 (no fishing expedition where complaint cited portions of program allegedly copied and plaintiff's rationale for so

believing).) It is no justification that a fishing expedition might result in worthwhile information; the possibility of success must be sufficient to justify the inconvenience or expense to the opponent. Still, the fact that some discovery is necessary before a complaint may be filed, or before a complaint may survive a motion to dismiss, does not establish that the complaint is improper. Supreme Court Rule 224 (134 Ill. 2d R. 224) provides for discovery before suit to identify responsible persons and entities. (See *Shutes v. Fowler* (1991), 223 Ill. App. 3d 342, 584 N.E.2d 920.) Supreme Court Rule 201(*l*) (134 Ill. 2d R. 201 (*l*)) provides for limited discovery before a court rules on a special appearance to contest jurisdiction.

Supreme Court Rule 201(b)(1) allows a party to obtain by discovery full disclosure regarding any relevant matter, even where the discovery "relates to the claim or defense of the party seeking disclosure." (134 Ill. 2d R. 201(b)(1).) Discovery may be initiated after all defendants have appeared or are required to appear, or earlier with leave of court. (134 Ill. 2d R. 201(d).) Still, the trial court may deny or limit discovery "to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." (134 Ill. 2d R. 201(c)(1).) A discovery request may properly be quashed where the trial court has before it sufficient information upon which to decide defendant's motion to dismiss. (*Continental Grain Co. v. FMC Corp.* (1975), 27 Ill. App. 3d 819, 327 N.E.2d 371; *Evers v. Edward Hospital Association* (1993), 247 Ill. App. 3d 717, 734-35, 617 N.E.2d 1211, 1224-25 (trial court could limit discovery to what it viewed as primary issue on motion to dismiss); *Heerey v. Berke* (1989), 179 Ill. App. 3d 927, 941-42, 534 N.E.2d 1277, 1286.) However, a trial court should not refuse a discovery request and grant a motion to dismiss where it reasonably appears discovery might assist the party resisting the motion. (*Senese v. Climatemp, Inc.* (1991), 222 Ill. App. 3d 302, 320, 582 N.E.2d 1180, 1192 (limited discovery will cast light on unclear portions of this complaint).) Especially where the facts are exclusively within the knowledge of the opponent, it may be error to deny discovery before ruling on a motion to dismiss. (*Cole Taylor Bank v. Corrigan* (1992), 230 Ill. App. 3d 122, 127, 595 N.E.2d 177, 180-81.) We conclude the trial court should have allowed some discovery here before ruling on the motion to dismiss.

Reversed and remanded.

KNECHT, J., concurs.

JUSTICE GREEN, specially concurring:

I agree with the majority that the various counts in issue state a cause of action for wilful and wanton misconduct because of the allegations that the EMTs stopped treatment too soon. The allegations in that respect are very detailed. I disagree with any contention of the majority that allegations that the EMTs administered CPR in violation of applicable standards while the decedent was not in a horizontal position were sufficient to state a cause of action for wilful and wanton misconduct. However, as the question of striking portions of the various counts are not before us, I concur in the decision to reverse and remand.

In *Adkins*, in holding the complaint did not properly plead wilful and wanton conduct, the court stated that "[f]act pleading, in contrast to *notice* pleading, is required in this State." (Emphasis added.) (*Adkins*, 129 Ill. 2d at 518, 544 N.E.2d at 743.) That opinion noted that the first count of that complaint failed to "sufficiently allege *facts showing* that any [person for which that defendant was responsible acted] *** without adequate cause or with utter indifference to his rights or in conscious disregard of them." (Emphasis added.) *Adkins*, 129 Ill. 2d at 518, 544 N.E.2d at 743.

Here, the failure of the EMTs to place the decedent in a horizontal position before administering CPR could be wilful and wanton only if that could reasonably have been done. Absent an allegation of that fact, the complaint here also failed to "sufficiently allege facts showing that" any EMT personnel here acted wilfully and wantonly in regard to the CPR.

Curiously, plaintiff did allege in paragraph 53 of count III of the amended complaint that the decedent could have been extracted from the vehicle before he was declared dead and emergency care ceased, but no such allegation was made as to what could have been done when CPR was administered.

The general language quoted by the majority from *Meerbrey* and *Burdinie* was stated in opinions where the court found the allegations failed to set forth causes of action. Justice Ward was the author of both *Meerbrey* and *Adkins*. I do not interpret that language to negate the necessity of pleading ultimate facts showing a cause of action.