FIRST DIVISION
 April 28, 1997

No. 1-95-1335
JULIA TUDOR, Individually and on Behalf ) Appeal from the
of All Others Similarly Situated, ) Circuit Court
 ) of Cook County
 Plaintiff-Appellant, )
 )
v. )
 )
JEWEL FOOD STORES, INC., f/k/a Jewel )
Companies, Inc., ) Honorable 
 ) Dorothy Kinnaird
 Defendant-Appellee. ) Judge Presiding.

 JUSTICE O'BRIEN delivered the opinion of the court:
 Plaintiff, Julia Tudor, filed a three-count second amended
complaint against defendant, Jewel Food Stores, Inc., alleging that
defendant had improperly charged her for several grocery items over
a four-day period in 1993 because electronically scanned prices
differed from the advertised or shelf prices for those items. In
count I, plaintiff pleaded that defendant's conduct violated
section 2 of the Consumer Fraud and Deceptive Business Practices
Act (Consumer Fraud Act) (815 ILCS 505/2 (West 1992)). In count
II, plaintiff pleaded a violation of sections 2-714 and 2-715 of
the Uniform Commercial Code (810 ILCS 5/2-714, 2-715 (West 1992)). 
In count III, plaintiff alleged a theory of unjust enrichment. The
trial court granted defendant's section 2-615 
motion to dismiss all three counts. 735 ILCS 5/2-615 (West 1992). 
Plaintiff appeals. We affirm.
 In ruling on a section 2-615 motion to dismiss, the court must
accept as true all well-pleaded facts and all reasonable inferences
that can be drawn therefrom. Kolegas v. Heftel Broadcasting Corp.,
154 Ill. 2d 1, 8-9 (1992). The court should not dismiss a
complaint under section 2-615 unless it clearly appears no set of
facts could be proved under the pleadings that would entitle the
pleader to relief. Johnson v. George J. Ball, Inc., 248 Ill. App.
3d 859, 863 (1993). In making such a determination, the court is
to interpret the allegations of the complaint in the light most
favorable to plaintiff. Kolegas, 154 Ill. 2d at 9. 
 In order to state a cause of action under section 2 of the
Consumer Fraud Act, plaintiff must allege facts establishing (1) a
deceptive act or unfair practice; (2) an intent by defendant that
plaintiff rely on the deception; and (3) the deception occurred
during trade or commerce. Saunders v. Michigan Avenue National
Bank, 278 Ill. App. 3d 307, 312 (1996). Neither party disputes
that defendant's actions occurred during trade or commerce, so we
focus our analysis on whether defendant's acts were deceptive
and/or unfair, and whether defendant intended for plaintiff to rely
on any deception. 
 Plaintiff pleaded in count I of her second amended complaint
that it is deceptive and unfair for defendant to charge an
electronically scanned price higher than the price offered in the
newspaper and on the shelf. However, plaintiff also pleaded that
defendant's internal audits show its electronic scanners were
accurate 96% of the time from 1991 through 1993, which exceeds the
75% to 92% accuracy rate indicative of a "serious violation"
according to the Law and Regulations Committee of the National
Conference of Weights and Measures. Further, plaintiff pleaded
that defendant provided her with a receipt enabling her to
determine whether the scanned prices accurately reflected the
advertised and shelf prices. Plaintiff also pleaded that defendant
has a policy providing "[i]f the scanned price on any unmarked item
is different from the price on the shelf, you will get the item
free." The combination of the high accuracy rate of the scanners,
along with the issuance of a receipt and defendant's policy of
providing a money-back guarantee if the scanned price differs from
the shelf price, indicates there was no deception by defendant. 
 Nor is defendant's conduct "unfair" under the Consumer Fraud
Act. To be unfair under the Act, defendant's conduct must violate
public policy, be so oppressive that the consumer has little
alternative but to submit, and substantially injure the consumer. 
Saunders, 278 Ill. App. 3d at 313. Plaintiff contends overcharges
resulting from a mistake of fact are against public policy and that
the overcharges are "statistically significant" and therefore
substantially injurious. However, even assuming plaintiff's
arguments are correct, she has not adequately pleaded that she had
no alternative but to pay the incorrectly scanned prices. In fact,
as discussed above, plaintiff pleaded that defendant issues a
receipt, enabling her to check whether she has been correctly
charged, and offers a money-back guarantee if the scanned price
differs from the shelf price. Thus, we find an absence of the
oppressiveness and lack of meaningful choice necessary to establish
unfairness.
 Accordingly, we find plaintiff has failed to adequately plead
the first prong of a Consumer Fraud Act violation, that defendant's
acts were deceptive or unfair.
 Further, the combination of the issuance of the receipt, along
with the money-back guarantee if the scanned price differs from the
shelf price, indicates defendant did not intend that plaintiff rely
on an incorrectly scanned price. Thus, plaintiff has also failed
to adequately plead the second prong of a Consumer Fraud Act
violation, that defendant intend that plaintiff rely on its
deceptive act or unfair practice. Accordingly, count I of
plaintiff's second amended complaint failed to state a cause of
action under section 2 of the Consumer Fraud Act. 
 Federal Trade Comm'n v. Pantron I Corp., 33 F.3d 1088 (9th
Cir. 1994), cited by plaintiff, is inapposite. There, the court
found the defendant's representation that its product was effective
in arresting hair loss and stimulating hair regrowth in baldness
sufferers constituted a false advertisement under the Federal Trade
Commission Act. The court also held the existence of a money-back
guarantee was insufficient to preclude a monetary remedy. Pantron,
33 F.3d at 1103. 
 Contrary to Pantron, plaintiff here does not argue that the
products she bought from defendant did not work as advertised.
Rather, she claims defendant overcharged her for those products by
the use of its electronic scanners and defendant intended that she
rely on the scanned prices to accurately reflect the advertised and
shelf prices. Further, this case does not turn solely on the
money-back guarantee for improperly scanned prices. Instead, the
case turns on whether the 96% accuracy rate of the scanners, in
conjunction with the receipt and the money-back guarantee, shows a
violation of the Consumer Fraud Act. Thus, Pantron is factually
different from this case and does not compel a different result.
 The present case is also dissimilar to two other cases cited
by plaintiff, People ex rel. Hartigan v. Stianos, 131 Ill. App. 3d
575 (1985), and People ex rel. Hartigan v. Knecht Services, Inc.,
216 Ill. App. 3d 843 (1991). In Stianos, plaintiff appealed the
trial court's order denying his motion for issuance of a
preliminary injunction against defendants, retailers who
overcharged for sales tax on each purchase. The appellate court
reversed and remanded, finding defendants' conduct deceptive and
unfair under the Consumer Fraud Act. In Knecht, the appellate
court affirmed the trial court's judgment against defendants,
finding that defendants' practice of advertising their home repair
services at a "minimum charge," when they actually charged
exorbitant prices, was deceptive under the Consumer Fraud Act. 
Neither Stianos nor Knecht involved a case like the present one,
where defendant charged consumers the correct price 96% of the time
and offered customers a money-back guarantee in those instances
where they were overcharged. Thus, Stianos and Knecht are not
helpful to plaintiff.
 Plaintiff makes several more arguments in support of her
contention that she pleaded a cause of action under the Consumer
Fraud Act despite the 96% accuracy rate of defendant's scanners,
defendant's issuance of a receipt, and the money-back guarantee
offered by defendant. First, plaintiff contends defendant's 96%
accuracy rate should not be considered when determining whether she
stated a cause of action under the Consumer Fraud Act, because
section 10a of the Act, in effect at the time she filed her
complaint, stated "[p]roof of a public injury, a pattern, or an
effect on consumers generally shall not be required." (Emphasis
added.) 815 ILCS 505/10a (West 1992) (now, as amended, 815 ILCS
505/10a (West Supp. 1995)). However, notwithstanding section 10a
of the Consumer Fraud Act then in effect, plaintiff pleaded in her
second amended complaint that defendant is engaged in a
"statistically significant pattern of mischarges," and she also
pleaded that the 96% scanning accuracy rate by defendant shows such
a "significant pattern." Having pleaded a pattern of misconduct by
defendant, plaintiff cannot now argue that those allegations
should not be considered.
 Plaintiff contends, though, that the prior version of her 
complaint did not contain allegations of defendant's 96% scanning
accuracy rate, and she included those allegations in her second
amended complaint in response to comments by the trial judge. In
effect, plaintiff asks us to consider only the allegations of her
prior complaint. However, where, as here, an amended complaint is
complete in itself and does not adopt a prior pleading, the prior
pleading is considered abandoned and withdrawn. Tabora v. Gottlieb
Memorial Hospital, 279 Ill. App. 3d 108, 113 (1996).
 Second, plaintiff argues the second amended complaint should
not be dismissed until the completion of full discovery, which
might show defendant's electronic scanning accuracy rate is lower
than 96% or that defendant has otherwise failed to comply with
industry standards regarding electronic scanners. In support,
plaintiff cites Yuretich v. Sole, 259 Ill. App. 3d 311 (1994),
which held "a trial court should not refuse a discovery request and
grant a motion to dismiss where it reasonably appears discovery
might assist the party resisting the motion." Yuretich, 259 Ill.
App. 3d at 317. However, we must reject plaintiff's argument since
further discovery would not change the fact that defendant provided
plaintiff with a receipt and money-back guarantee for incorrectly
scanned prices and thereby showed it did not intend that she rely
on any deception. 
 Third, plaintiff argues defendant's money-back guarantee
improperly displaces the exclusive remedy provided by the Consumer
Fraud Act with an "alternative remedy" that is not effective or
known by most consumers. However, that argument is not relevant
here. This appeal concerns whether plaintiff has stated a cause of
action under the Consumer Fraud Act. The money-back guarantee
offered by defendant simply is one factor showing that defendant
did not defraud plaintiff or intend that plaintiff rely on any
deception. 
 Fourth, plaintiff contends even if the money-back guarantee is
a remedy that can properly coexist with the remedies provided in
the Consumer Fraud Act, she "may adopt all or select any one
[remedy] which [s]he thinks best suited to the end sought." 
Fleming v. Dillon, 370 Ill. 325, 331 (1938). Plaintiff is
apparently arguing that the money-back guarantee does not prevent
her from choosing to disregard that guarantee and instead bring
suit against defendant. Even assuming plaintiff's argument is
correct, the money-back guarantee still is a factor showing that
defendant did not defraud plaintiff or intend that plaintiff rely
on any deceptive practices. 
 Fifth, plaintiff argues defendant acted unfairly under the
Consumer Fraud Act because the actual selling price of a jar of
peanut butter was not marked on the shelf in one of defendant's
stores in May 1993. We do not address this argument because
plaintiff did not plead it in her second amended complaint.
 Next, we address whether count II of plaintiff's second
amended complaint states a cause of action under sections 2-714 and
2-715 of the Uniform Commercial Code (UCC). Initially, we note
that plaintiff contends defendant did not refer to the alleged UCC
violations in its motion to dismiss. However, our review of
defendant's motion to dismiss indicates otherwise. Accordingly, we
proceed to address whether the trial court correctly dismissed 
count II.
 Section 2-714 of the UCC states in relevant part:
 "Where the buyer has accepted goods and given
 notification (subsection (3) of Section 2-607) he may
 recover as damages for any nonconformity of tender the
 loss resulting in the ordinary course of events from the
 seller's breach as determined in any manner which is
 reasonable." (Emphasis added.) 810 ILCS 5/2-714 (West
 1992).
Section 2-715 provides for incidental and consequential damages
resulting from the seller's breach. See 810 ILCS 5/2-15 (West
1992).
 Defendant argues plaintiff cannot recover under sections 2-714
and 2-715 because the complaint did not adequately allege that
plaintiff notified defendant of the breach as required by section
2-607. In fact, plaintiff pleaded that she had not notified
defendant when she discovered defendant had overcharged her. 
Plaintiff argues she was excused from giving direct notice because
defendant "has known for years of a statistically significant
pattern of mischarges to its customers" and because the filing of
plaintiff's complaint served as notice to defendant.
 However, in Connick v. Suzuki Motor Co., 174 Ill. 2d 482
(1996), our supreme court rejected both of plaintiff's arguments. 
The court held that a buyer must notify the seller of the
troublesome nature of his particular transaction; the buyer cannot
rely on the seller's knowledge of problems with third parties. 
Connick, 174 Ill. 2d at 493. Further, the court held that only a
consumer buyer who suffers a personal injury may satisfy the
section 2-607 notice requirement by filing a complaint against the
seller. Connick, 174 Ill. 2d at 495. The reason is that, where
the breach has not resulted in personal injury, the UCC prefers the
breach be cured without a lawsuit. Connick, 174 Ill. 2d at 495. 
 Thus, count II of plaintiff's second amended complaint failed
to state a cause of action under sections 2-714 and 2-715 of the
UCC because it did not sufficiently allege the notice required
under section 2-607. 
 Plaintiff argues, though, that Connick involved a lawsuit
where the UCC claims were the initial pleading asserted, and the
defendant did not have an opportunity to investigate and negotiate
prior to the filing of the suit. In contrast, plaintiff's initial
complaint here was a single count alleging a violation of the
Consumer Fraud Act. Plaintiff filed an amended complaint three
months later adding the alleged UCC violations. Therefore,
plaintiff contends defendant had "ample time" to investigate and
negotiate a settlement prior to the filing of the UCC claims. 
 We reject plaintiff's argument. First, it is unclear from
Connick whether the UCC claims there were the initial pleading
asserted or whether they were added later. Moreover, the timing of
the UCC claims is irrelevant here. Connick holds that the filing
of a complaint does not satisfy the notice under section 2-607 of
the UCC where the plaintiff was not injured as a result of the
seller's breach. Here, the only notice plaintiff gave to defendant
was the filing of her complaint. Therefore, the trial court
properly dismissed plaintiff's UCC claims.
 Next, we address whether count III of plaintiff's second
amended complaint states a cause of action for unjust enrichment. 
Plaintiff contends defendant did not refer to count III in its
motion to dismiss. Our review of the record indicates otherwise. 
Accordingly, we proceed to address whether the trial court
correctly dismissed count III.
 Plaintiff argues she has pleaded a cause of action for unjust
enrichment pursuant to section 20 of the Restatement of
Restitution. Section 20 provides:
 "A person who has paid another an excessive amount of
 money because of an erroneous belief induced by a mistake of
 fact that the sum paid was necessary for the discharge of a
 duty, for the performance of a condition, or for the
 acceptance of an offer, is entitled to restitution of the
 excess." Restatement of Restitution 20 (1937). 
 However, defendant correctly points out that section 63 of the
Restatement of Restitution provides:
 "There is no breach of duty to make restitution because
 of a transfer made by mistake until the transferee or
 beneficiary has notice of the facts upon which the
 transferor's right depends and has had a reasonable
 opportunity for making restitution." Restatement of
 Restitution 63 (1937). 
As discussed above, plaintiff failed to adequately plead that she
notified defendant about the overcharges. Accordingly, the trial
court did not err in dismissing count III of plaintiff's second-
amended complaint.
 Plaintiff cites Chicago, Rock Island & Pacific Ry. Co. v.
Steckman, 125 Ill. App. 299 (1906), aff'd, 224 Ill. 500 (1906),
Albert Pick & Co. v. Spoor, 212 Ill. App. 612 (1918), and
McConnaughy v. Gage, 252 Ill. App. 17 (1929), in support of her
argument that she was not required to notify defendant about the
overcharge prior to bringing suit. However, those cases are
inapposite because they did not involve unjust enrichment claims
premised on the mistaken transfer of an excessive amount of money
and, thus, were not subject to section 63 of the Restatement of
Restitution. Instead, Steckman involved a personal injury action,
Spoor involved a replevin action following nonpayment of a note due
on demand, and Gage involved a suit brought to enforce payment of
a note. 
 Plaintiff also argues that defendant's fraudulent conduct
obviated any notice requirement on her part. See Restatement of
Restitution 63, Comment a, at 245 (1937) ("If the transferee
acquires the subject matter by fraud his duty to make restitution
arises at once; he then has notice of relevant facts and of his
duty to restore".) However, as discussed above, plaintiff has
failed to adequately plead facts showing a consumer fraud
violation. Therefore, plaintiff was required to give notice to
defendant prior to filing suit.
 For the foregoing reasons, we affirm the trial court. In
light of our disposition of this case, we need not address
plaintiff's argument that the trial court erred in denying
plaintiff's motion for class certification.
 Affirmed.
 CAHILL, J., and THEIS, J., concur.